ELECTRIC MANAGEMENT & ENGINEER-
ING CORPORATION v. UNITED POWER
& LIGHT CORPORATION (OF KANSAS)
et al.

Circuit Court of Appeals, Eighth Circuit.
April 21, 1927.

No. 7424.

1. Corporations �köm116—Ten dollars held suf-
ficient consideration to support contract to
sell controlling· interest in corporation, in-
cluding right to withdraw from contract in
purchaser's discretion.

Sum of $10, receipt of which was acknowl-
edged, though nominal, *held* sufficient considera-
tion to support controlling stockholders' con-
tract to sell controlling interest in corporation,
including the option of purchaser to withdraw
in its discretion, if results of preliminary ex-
amination of books and properties of corpora-
tion were not satisfactory to it.

2. Contracts ⊙☞10(1)—Agreement founded on
consideration is not invalid, for want of
mutuality, because obligatory on one party
only.

Agreement founded on consideration is not
invalid for want of mutuality, because it is
obligatory on one party and optional with other,
and this rule applies where there is a valuable
consideration paid by one party to another for
the privilege of doing a certain thing, but not
when sole consideration is a promise for a
promise, and the things to be done or goods to
be furnished are uncertain, indefinite, and op-
tional with party seeking to enforce contract.

3. Contracts ⊙☞10(4)—Contract to sell con-
trolling interest in corporation giving pur-
chaser right to withdraw held not void for
want of mutuality.

Controlling stockholder's contract to sell
controlling interest in corporation in consider-
ation of $10 paid for contract giving purchaser
right to withdraw from contract if result of
its preliminary examinations of corporation's
books and properties were unsatisfactory to it,
*held* not void for want of mutuality of obliga-
tion.

4. Specific performance ⊙☞8—Specific per-
formance of contract is within sound discre-
tion of court, determined by circumstances of
case.

Specific performance of contract is not
matter of absolute right in party demanding it,
but application is addressed to sound discre-
tion of court, and will be granted or denied
according to the circumstances of the individual
case, but denial must not be arbitrary.

5. Specific performance ⊙☞6—Specific per-
formance will not be enforced in favor of
party whom court cannot compel to perform,
unless such party has performed.

Generally specific performance of contract
will not be enforced by a court in favor of a
party against whom court has no power ef-
fectually to compel its performance and who
remains free to refuse its performance; but,
*if plaintiff has fully performed that which under*
contract he was not compelled to perform, lack
of mutuality of remedy cannot be urged by
other party as defense.

6. Specific performance ⊙☞32(2)—Purchase
under option may supply mutuality.

While an option to purchase has not ex-
pired, plaintiff may elect to purchase, and thus
supply missing quality of mutuality.

7. Specific performance ⊙☞6—Requirement of
mutuality of remedy is satisfied, if it exists
when suit for specific performance is filed.

Requirement of mutuality of remedy, au-
thorizing specific performance, is satisfied, if
mutuality exists at time suit is filed.

8. Specific performance ⊙☞57—Equity will not
compel specific performance of agreement in
contract to sell controlling stock interest,
giving purchaser right to make preliminary
investigations contained in contract.

Equity will not compel specific performance
of agreement, in contract to sell controlling
stock interest in corporation, providing for
preliminary investigation of corporation's books
and properties, and giving purchaser right to
withdraw from contract at its sole discretion, if
results of investigation are not satisfactory to
it, since such investigation is merely incidental
provision, and would be useless if purchaser
should decide not to purchase.

9. Specific performance ⊙☞32(2)—Bringing
suit to compel specific performance of por-
tion of contract authorizing preliminary in-
vestigation, with right to withdraw if results
are unsatisfactory, held not to supply mutu-
ality.

Bringing of suit to compel specific per-
formance of portion of executory contract to
sell controlling stock interest in corporation,
which authorized preliminary investigation of
corporation's books and properties by pur-
chaser, with right to withdraw from contract
if results of investigation were unsatisfactory,
*held* not to satisfy requirement of mutuality by
constituting election to purchase or submission
to any decree court might enter; rule that
opinion of an arbiter is not conclusive unless
honest judgment is exercised not being applica-
ble.

10. Appeal and error ⊙☞959(1)—Equity ⊙☞
267—Right to amend bill rests in trial court's
sound discretion, and abuse thereof must be
plain to authorize review.

Right to amend bill rests largely, if not
wholly, in discretion of trial court, and abuse
of this discretion must be made plain to au-
thorize appellate review.

11. Appeal and error ⊙☞681—Trial court's re-
fusal to permit amendment of bill cannot be
reviewed, where record did not disclose
ground, nor amendment proposed.

Where record did not disclose ground on
which application to amend bill was made, nor
amendment proposed, exercise of trial court's
discretion in refusing amendment cannot be
reviewed on appeal.

Appeal from the District Court of the
United States for the District of Kansas.

Suit by the Electric Management & En-
gineering Corporation against the United
Power & Light Corporation (of Kansas) and

others. Decree for defendants, and plaintiff appeals. Affirmed.

Raymond F. Rice, of Lawrence, Kan., and Lee Bond, of Leavenworth, Kan. (Walter G. Thiele, of Lawrence, Kan., on the brief), for appellant.

Thomas F. Doran, of Topeka, Kan., and Arthur Hurd, of Abilene, Kan. (Clayton E. Kline, of Topeka, Kan., C. E. Rugh, of Abilene, Kan., T. M. Lillard, Bruce Hurd, and O. B. Eidson, all of Topeka, Kan., and Herbert Haase and Charles Le Roy Brown, both of Chicago, Ill., on the brief), for appellees.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SYMES, District Judge.

VAN VALKENBURGH, Circuit Judge. Appellant is a Delaware corporation, authorized to acquire, own, hold, maintain, operate, and manage electric light and power, gas, water, and ice plants, and street and interurban railway systems including the power to purchase, acquire, own, hold, and sell the stocks and securities of corporations engaged in the operation of such plants and systems. The appellee, United Power & Light Corporation, is a Kansas corporation, having its principal office in the city of Abilene, Kan. It owns, controls, and operates numerous plants, systems, and properties in the state of Kansas for the manufacture and distribution of gas, electricity for light, heat, and power for the manufacture of ice, for the distribution of water, and for the operation of street and interurban railways. Of the individual appellees, C. L. Brown is alleged to be the president, R. J. Long, the vice president and general manager, and J. H. Agee, the secretary and general counsel, for said appellee corporation. Appellees G. A. Rogers and C. G. Johnson are alleged to be stockholders and directors thereof. The above-named individual appellees are further alleged to be the owners of 77 per cent. of the issued and outstanding common capital stock of said United Power & Light Corporation.

November 12, 1925, the said R. J. Long and J. H. Agee, named as acting for themselves and in behalf of all other common stockholders of the United Power & Light Corporation, entered into an agreement with appellant whereby, in consideration of mutual promises, covenants, and agreements therein contained, and the sum of $10, and other good and valuable considerations paid, the receipt whereof was acknowledged, they agreed to sell and appellee agreed to buy 22,153½ shares, or not less than 97 per cent. thereof, of the common capital stock of the United Power & Light Corporation, subject to the conditions, covenants, and representations thereinafter set forth. The purchase price was to be determined by either of two options: (a) The sellers should have the right to demand and receive the sum of $80 per share for as much stock as they might decide to sell for cash; or (b) the sellers should have the right to demand and receive for each share of stock delivered to the purchaser $62.75 per share in cash and one share of preferred stock of $50 par value. This preferred stock was to be issued by a holding company, to be incorporated in either the state of Delaware or Maine, which holding company was to own all the common shares of said United Power & Light Corporation, to be delivered under said agreement. This agreement or contract contained the following provision:

"3. The purchaser agrees at the earliest date possible to cause to be made a legal, engineering, and auditing examination of the status and properties and books of the said United Power & Light Corporation of Kansas, and to verify the representations herein made, and in the event that either said legal, engineering, or auditing report be considered unsatisfactory by the purchaser (in its sole discretion) the purchaser shall have the right to withdraw from this contract, and shall be under no obligations hereunder, and this contract shall be deemed to be null and void."

The representations referred to were numbered from A to L, inclusive, and dealt with the financial condition of appellee corporation, the conduct of its business during the period contemplated by the contract, certain limitations upon the sale of stock, and numerous other provisions unnecessary to be stated in detail. It was further provided that:

"In making the examinations and audits hereinbefore provided for, the sellers agree to furnish for the inspection of the representatives of the purchasers all records, books, accounts, contracts, franchises, abstracts of title, and other papers of the corporation, and to assist in every way in facilitating the examination herein contemplated. The engineers or other representatives of the purchaser shall have free access to power plants, building, and structures of the corporation, and the sellers agree to provide means of transportation in making the inspection of its properties."

Finally the agreement provided that the

purchaser should notify the seller, on or before December 23, 1925, of its willingness to complete the purchase of stock therein provided for, or of its election to withdraw from the contract, as provided for in paragraph 3; that, should the purchaser notify the seller that it desired to complete the purchase of the said shares of stock, the date of closing should be January 6, 1926, unless an earlier date should be designated by the purchaser.

Thereafter appellant notified appellees that it was sending its agents and representatives to make such inspection, examinations, and investigations as were provided by the terms of said agreement. It is alleged that appellees refused to allow appellant, or any of its agents, officers, or employees, to examine any of the books, records, or accounts of appellee corporation, or to make any examinations, investigations, or audits of any of the affairs of said corporation, and notified appellant that they considered themselves no longer bound by the terms of the agreement of November 12, 1925, aforesaid. Thereupon appellant filed its bill of complaint in the United States District Court for the District of Kansas, praying for specific performance of said contract according to its terms, and incidentally, as a preliminary thereto, that appellees be compelled to permit the examinations, investigations, and audits demanded, and to do and perform all and every act and deed incumbent upon them under the terms of said contract. To this bill appellees interposed motions to dismiss, which were sustained. From the order and decree dismissing the bill, this appeal is brought.

Appellees urge a number of grounds upon which they rely to sustain the order and decree of the trial court. We deem it sufficient to consider but three:

(1) The alleged contract is void and unenforceable, because of want of consideration moving from appellant to appellees.

(2) The alleged contract is void and unenforceable, because lacking in mutuality of obligation.

(3) The alleged contract is unenforceable, because lacking in mutuality of remedy.

The ground principally urged in support of points 1 and 3 is that "under the terms of the alleged contract appellant reserved and possessed absolute power to withdraw from the contract at its sole discretion or will, and thus escape performance, which the court was, under the contract, without power to compel in favor of appellees against appellant."

[1] 1. The defense of want of consideration must be ruled against appellees. The sum of $10, the receipt whereof was duly acknowledged, though nominal, was sufficient to support the contract and every stipulation favorable to the buyer, including the option to withdraw in its discretion. Brewster v. Lanyon Zinc Co. (C. C. A. 8) 140 F. 801, 807; Davis v. Wells, 104 U. S. 159, 168, 26 L. Ed. 686; Allegheny Oil Co. v. Snyder (C. C. A. 6) 106 F. 764, 767; Brown et al. v. Fowler et al., 65 Ohio St. 507, 525, 63 N. E. 76; Gas Co. v. Eckert, 70 Ohio St. 127, 135, 71 N. E. 281.

[2, 3] 2. Nor can the contract be held void because of want of mutuality of obligation. The rule is thus stated: "When there is an agreement founded on a consideration, it is not invalid for want of mutuality because one party has an option, while the other has not, or, in other words, because it is obligatory on one and optional with the other." 9 Cyc. p. 334; Conley Camera Co. v. Multiscope & Film Co. (C. C. A. 8) 216 F. 892, 896.

The foregoing rule applies where there is a valuable consideration paid by one party to another for the privilege of doing a certain thing. It is otherwise when the sole consideration is a promise for a promise, and the things to be done or the goods to be furnished are uncertain, indefinite, and optional with the party seeking to enforce the contract. Conley Camera Co. v. Multiscope & Film Co., supra; Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co. (C. C. A. 8) 114 F. 77, 57 L. R. A. 696; City & County of Denver v. Stenger (C. C. A. 8) 277 F. 865.

[4] 3. But such contracts, although good at law when conforming to the rule above stated, are not favored by, and will not always be enforced in, equity. 9 Cyc. 334; 36 Cyc. 622. The specific performance of contracts is not a matter of absolute right in the party demanding it, but the application is addressed to the sound discretion of the court, and will be granted or denied according to the circumstances of the individual case. 36 Cyc. 548. The denial must not, of course, be arbitrary. 11 Michie's Encyc. U. S. Sup. Ct. Rep. 16; Shubert v. Woodward (C. C. A. 8) 167 F. 47.

[5] The general rule is that specific performance of a contract will not be enforced by a court in favor of a party to it against whom the court has no power effectually to

compel its performance, and who remains free to refuse performance. Shubert v. Woodward, supra; Mutual Life Ins. Co. et al. v. Stephens, 214 N. Y. 488, 108 N. E. 856, L. R. A. 1917C, 809; Ryan v. McLane, 91 Md. 175, 46 A. 340, 50 L. R. A. 501, 80 Am. St. Rep. 438; Williston on Contracts, vol. 3, § 1442; Hutchinson Gas & Fuel Co. v. Wichita Natural Gas Co. (C. C. A. 8) 267 F. 35; Roller v. Weigle et al., 49 App. D. C. 102, 261 F. 250, 252; Woerheide et al. v. Barber Asphalt Pav. Co. (C. C. A. 8) 251 F. 196; Incorporated Town of Laurens v. Gas & Electric Co. (C. C. A. 8) 282 F. 432; Marble Co. v. Ripley, 10 Wall. 339, 359, 19 L. Ed. 955; Express Co. v. R. R. Co., 99 U. S. 191, 200, 25 L. Ed. 319; Woolsey v. Ryan, 59 Kan. 601, 54 P. 664; Rust v. Conrad et al., 47 Mich. 449, 11 N. W. 265, 41 Am. Rep. 720; Lindlay v. Raydure (D. C.) 239 F. 928, 938, affirmed (C. C. A. 6) 249 F. 675; Brewster v. Lanyon Zinc Co. (C. C. A. 8) 140 F. 801, 812.

[6, 7] This rule, which involves mutuality of remedy, as distinguished from mutuality of obligation, of course, has exceptions. Thus, if a plaintiff has fully performed that which under the contract he was not compelled to perform, lack of mutuality cannot be urged by the other party as a defense, and while an option to purchase has not expired a plaintiff may elect to purchase, and thus supply the missing quality of mutuality of remedy. Mississippi Glass Co. v. Franzen (C. C. A. 3) 143 F. 501; Mutual Life Ins. Co. v. Stephens et al., 214 N. Y. 488, 108 N. E. 856, L. R. A. 1917C, 809. And this may be done, it would seem, by the filing of a suit for specific performance, if the fact of election be made sufficiently definite. Epstein v. Gluckin, 233 N. Y. 490, 135 N. E. 861. The requirement of mutuality is satisfied, if mutuality of remedy exists at the time the suit is filed. Clark v. Andrew (C. C. A. 5) 11 F.(2d) 958; Incorporated Town of Laurens v. Northern Iowa Gas & Electric Co. (C. C. A. 8) 282 F. 432.

Counsel for appellant insist that the rule requiring mutuality of remedy has been so qualified by exception that it has lost its substance and ceased to exist. To this we cannot accede. Confusion has arisen because of efforts, some of them consummated, to extend its application beyond the principles which led to its adoption. For example, it has been held that a continuing contract will not be enforced specifically, if it is one which, by its terms, plaintiff is permitted to terminate at will. Thus broadly stated, the rule is "restrained by many exceptions."

In Guffey v. Smith, 237 U. S. 101, 35 S. Ct. 526, 59 L. Ed. 856, the Supreme Court, speaking through Mr. Justice Van Devanter, held that: "An oil and gas lease of undeveloped land requiring all expenses to be paid by the lessee, and providing for reasonable royalties and fixed rental during a designated period of delay, is not so unfair and inequitable as to require that equitable relief be withheld, even where it contains a provision permitting the lessee to surrender it at any time." He held that the rule respecting mutuality which was invoked has to do with executory contracts, and had no application to the case before him. He added: "Rightly understood, this is not a suit for specific performance. Its purpose is not to enforce an executory contract to give a lease, or even to enforce an executory promise in a lease already given, but to protect a present vested leasehold, amounting to a freehold interest, from continuing an irreparable injury calculated to accomplish its practical destruction."

Further conflict has arisen over the question of whether mutuality of remedy must exist at the time of the formation of the contract, or at the time when performance is sought. It was to this question that Judge Cardozo addressed his criticism of the general rule in Epstein v. Gluckin, 233 N. Y. 490, 135 N. E. 861, upon which case appellant relies strongly to support its contention that the rule has ceased to exist. In that case the assignee of a vendee in a contract for the sale and purchase of land brought an action for specific performance. A judgment in his favor at a special term was reversed by the Appellate Division of the New York Supreme Court "on the ground that specific performance will not be granted at the suit of an assignee, unless the assignment of the contract is coupled with an assumption of its burdens." The Court of Appeals reversed the Appellate Division, holding, in effect, that it was sufficient if mutuality of remedy existed at the time of performance or decree. The original vendee was bound by the contract to unconditional performance. The assignee, by his suit, adopted the contract with its burdens and placed himself in the shoes of his assignor.

That is the extent of the holding in Epstein v. Gluckin. Mutual Life Insurance Co. v. Stephens et al., 214 N. Y. 488, 108 N. E. 856, L R. A. 1917C, 809, was neither cited, modified, nor disapproved. Judge Cardozo sat in that case and concurred in the opinion, in which this language occurs: "However, the plaintiff has not yet determined

whether to exercise its option to purchase. * * * It cannot resort to equity for the specific performance of an agreement and remain free to refuse performance on its part." And again: "The general rule is now thoroughly established in this state that a contract must be mutual in its remedy to warrant a decree for its specific performance. * * * However, it is not essential that the mutuality of remedy shall exist at the inception of the contract."

It will be observed that there is no conflict in the New York decisions, and that the general rule there announced is the one that obtains in this circuit and throughout federal jurisdictions.

[8] The suit cannot be upheld on the ground that appellant seeks primarily to make the inspections and investigations that form a part of its option privilege, and are preliminary to a determination of its willingness and readiness to purchase. In that view, the suit would really be one to compel the specific performance of a merely incidental provision of the contract, which would be useless if appellant should decide not to purchase. The provision for audits and examinations, is an integral and inseparable part of the contract in suit, and equity will not interpose to enforce a part of a contract unless that part is clearly severable from the remainder. It is otherwise where the parties have contemplated a piecemeal performance. Pantages v. Grauman (C. C. A. 9) 191 F. 317, 323; Odessa Tramways v. Mendel, L. R. 8 Ch. D. 235; Adams v. Messinger, 147 Mass. 185, 190, 17 N. E. 491, 9 Am. St. Rep. 679; Mutual Life Ins. Co. v. Stephens, 214 N. Y. 488, 108 N. E. 856, L. R. A. 1917C, 809; Hutchinson Gas & Fuel Co. v. Wichita Natural Gas Co. (C. C. A. 8) 267 F. 35.

In the case last cited we said: "The complete performance of a part of the consideration for an executory agreement while another substantial part thereof remains executory, and so indefinite and shadowy as to be unenforceable, is fatal to a suit for the specific performance of it." To the same effect is the holding in Woerheide v. Barber Asphalt Paving Co. (C. C. A. 8) 251 F. 196, that: "Complete performance of only one of five or six important executory contract obligations cannot prevent avoidance of the contract, where others equally important remain executory and are uncertain."

[9] As to the subject-matter of the agreement, the ultimate object of purchase and sale, the contract is still wholly executory. The payment of $10 was a consideration merely for the optional privilege; therefore the rule requiring mutuality of remedy applies unless appellant has satisfied its requirements. Its counsel insist that it has done this by the bringing of this suit for specific performance of the entire contract; that it has declared that it is ready, willing, and able to make the examinations, investigations, and audits provided for in the agreement for the purpose of verifying the representations made by appellees, and that it has submitted itself to a conditional decree that would prevent the exercise of its contract privilege to withdraw if the results of the expert investigations substantially sustain the representations made by the sellers. Neither its pleading, nor its position taken in brief and argument, thus broadly sustains this contention. In the brief this statement is found: "It is true, however, that the appellant seeks performance by the appellees at this time of only a part of their contract. It asks merely that the appellees be compelled to keep the status quo and to furnish the requisite data and opportunity for inspection, for which the consideration has been paid."

Enforcement of the rest of the contract is contemplated only "if the appellant elects to complete the purchase," thereby expressly reserving the privilege of withdrawal conferred by paragraph 3 of the contract. Counsel also urge that the exercise of that privilege is dependent not upon the will of appellant alone, but instead upon the truthfulness and accuracy of the representations made by the sellers as to the condition of the company, its affairs, and its properties as tested by appellant's experts. This construction of the contract does violence to its language. It is true that the opinion of an arbiter is ordinarily conclusive only in the absence of fraud or the failure to exercise an honest judgment. In other words, his decision must be rendered in good faith. But this rule does not apply to the privilege of withdrawal reserved by the express language of this contract, which provides that, if the report made "be considered unsatisfactory by the purchaser (in its sole discretion), the purchaser shall have the right to withdraw from this contract and shall be under no obligation hereunder and this contract shall be deemed null and void." Of such a reservation the rule is thus stated in Corpus Juris, vol. 13, p. 675: "In contracts involving matters of fancy, taste, or judgment, when one party agrees to perform to the satisfaction of the other, he renders the other party the sole judge of his satisfaction

without regard to the justice or reasonableness of his decision, and a court or jury cannot say that such party should have been satisfied where he asserts that he is not."

The use of the parenthetical words "in its sole discretion" brings this reservation within the rule just stated. Counsel contend that this is not true, because the investigation to be made was substantially confined to the accuracy of the representations made by the sellers as to the condition of the company, its affairs and its properties. Even so, whether the report of the experts is satisfactory to appellant is lodged in its sole discretion without regard to justice or reasonableness. But the subject-matter of the investigation to be made is not, by the terms of the contract, so narrow as thus stated. It is provided that there shall be made a legal, engineering, and auditing examination of the status and properties and books of the appellee corporation *and* to verify the representations made, and in the event that *either* said legal, engineering, or auditing report be considered unsatisfactory by the purchaser the right of withdrawal exists. It is entirely conceivable that conditions in the status and properties of the power and light corporation, not specifically covered by the representations made, and discovered as a result of the legal, engineering, and auditing examination contemplated, might be deemed unsatisfactory in the arbitrary discretion of the purchaser.

Nor has appellant in its bill supplied the missing quality of mutuality of remedy, either by election to purchase or by submitting itself unconditionally to any decree the court might see fit to enter. The extent of its submission is contained in the following paragraph:

"That your complainant stands ready, willing, and able to make the examinations, investigations, and audits as provided for by the terms of said contract for the purpose of verifying the representations therein made, and in the event the results and reports of said examinations, investigations, and audits are satisfactory to your complainant; that your said complainant is ready, able, and willing to carry out all of the terms of said contract and fulfill all of the conditions that are incumbent upon it thereunder."

By this language appellant reserves to itself all the rights and privileges conferred by the contract. The record contains no further nor broader concession.

[10] Appellant assigns as error that it asked to amend its bill and that the court denied its request. The decree reveals these bald facts and no more. The right to amend rests largely, if not wholly, in the discretion of the court, and the abuse of this discretion must be made plain to authorize review. United States v. Atherton, 102 U. S. 372, 375, 26 L. Ed. 213; Neale v. Neale, 9 Wall. 1, 19 L. Ed. 590; Bulte v. Igleheart Bros. et al. (C. C. A. 7) 137 F. 492, 500, 505.

[11] The record in this case does not disclose the ground on which the application was made nor the amendment proposed; consequently, the exercise of the court's discretion in refusing the amendment cannot be reviewed.

The substance of the errors assigned by appellant has been carefully considered and is embodied in the foregoing discussion. Appellees raise a number of additional points in support of the decree of the trial court. While they involve matters demanding serious consideration, and tend to support the soundness of the court's discretion, we deem their decision unnecessary in view of the conclusion reached upon the decisive question which has been discussed. The discretion of the trial court in refusing the specific performance prayed was sound.

The decree should be affirmed; and it is so ordered.